IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 15-cv-02061-RBJ

JILLANE HIXSON, on behalf of Hixson Farms,

    Plaintiff,

v.

U.S. DEPARTMENT OF AGRICULTURE,
SONNY PERDUE,[*] Secretary, U.S. Department of Agriculture,
STEVEN C. SILVERMAN,[**] Director, National Appeals Division,
JENNY PETERSON,[***] Acting State Executive Director, Colorado USDA Farm Service Agency, and
NATALIE BOND,[****] County Executive Director, Prowers County Farm Service Agency,

    Defendants.

## ORDER REVERSING AND REMANDING USDA'S DECISION

The Supplemental Revenue Assistance Payments Program ("SURE") is a federal crop insurance program operated by the United States Department of Agriculture ("USDA") under the authority of the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110–246, § 531, 122 Stat. 1651, 2156 (2008) (codified as amended at 7 U.S.C. § 1531(b)). To be eligible for SURE's

---

[*] In accordance with Rule 25(d) of the Federal Rules of Civil Procedure, Sonny Perdue is substituted for Tom Vilsack as the Secretary of the U.S. Department of Agriculture.

[**] Steven C. Silverman, Director of the National Appeals Division, is substituted for James T. Murray, former Deputy Director of the National Appeals Division.

[***] Jenny Peterson, Acting State Executive Director for the U.S. Department of Agriculture Farm Service Agency in Colorado, is substituted for Leland Swenson, the former State Executive Director.

[****] Natalie Bond is substituted for Chad Hart as County Executive Director of the Prowers County Farm Service Agency.

1

disaster assistance payments, an applicant must timely report its "failed acreage." 7 C.F.R. § 760.621.

Hixson Farms, LLC ("Hixson") operates a farm in Prowers County, Colorado. In late 2008 or early 2009 it sustained a loss of planted wheat due to wind and drought. In March 2009 Hixson submitted an insurance claim to Producers Agriculture Insurance Company on 961.7 acres of insured wheat. R. 110. An adjuster made a field inspection, verified the loss, and processed the claim. In April 2009 the wheat was destroyed with the adjuster's consent, and Hixson planted uninsured grain sorghum on 622.3 acres of the failed wheat. *Id.*

On May 19, 2009 Hixson filed a Form CCC-576, "Notice of Loss and Application for Payment Noninsured Crop Disaster Assistance Program," with the Prowers County Farm Service Agency ("FSA") Committee in support of a claim under the 2009 SURE program. R. 55. Although the form is for noninsured losses, the form is stamped "NOT FOR NAP," meaning that it relates to insured losses.[1] For reasons unknown to the Court, the Not for NAP notice, which is the subject of the present appeal, declared the affected acreage to be the 622.3 replanted acres rather than all 961.7 acres covered by the insurance claim. *Id.*

The Prowers County FSA Committee called Hixson's insurance agent, Crop Risk Advisors LLC, and requested documentation to verify Hixson's loss, but "[n]o response was received by September and the committee felt action needed to be completed." R. 461. The FSA never requested this information from Hixson directly or informed it that Crop Risk Advisors had not responded to its document request. *See* R. 111, 461. Consequently, on

---

[1] Hixson apparently submitted two CCC-576 forms, one for NAP (uninsured) acres and the other for Not for NAP (insured) acres. The NAP claim was disapproved, appealed, and again denied. That denial is not involved in the matter pending in this Court. R. 110–11.

September 15, 2009 Hixson's notice of failed acreage was "disapproved." R. 55. The disapproval was noted on the CCC-576 form merely by checking a "disapproved" box without explanation. *Id.* However, a letter mailed on September 18, 2009 by the Prowers County FSA Committee informing Hixson of the disapproval of the Not for NAP claim explained that the notice was disapproved because the committee concluded that "[t]his crop was destroyed and replanted prior to any notification to the Farm Service Agency that it was planted and failed." R. 32.[2] The letter advised Hixson of its right to appeal to the Colorado State FSA Committee within 30 days. *Id.* Accordingly, the FSA updated its record of Hixson's failed acreage, form CCC-578, replacing the 622.3 "reported" acres with zero "determined" acres. *See* R. 461, 529–31, 547–53.

The problem is, Hixson insists that it never received the September 18, 2009 disapproval letter. In any event Hixson did not appeal. Oddly, Hixson did nothing for more than two years after submitting its application until a month before the 2009 SURE program's deadline for claims. *See* R. 112; FSA Handbook 1-SURE, at ¶ 198(A). On June 30, 2011 Hixson inquired about the status of its failed acreage notice and was faxed a copy of the disapproval letter. R. 112. On July 8, 2011 Hixson brought the Prowers County FSA Committee the insurance agent's documentation of its failed wheat acres. R. 113, 461. On July 26, 2011 Hixson sent the FSA a letter seeking to appeal the September 15, 2009 decision due to alleged factual errors. R. 56. Among other things this letter cites Producers Agriculture Insurance's verification of the loss in

---

[2] The September 18, 2009 letter, sometimes referred to in the Record as the "Adverse Decision," cited FSA Handbook 2-CP, ¶ 23.5 C as requiring disapproval in that situation. R. 32. The CCC-576 form similarly specifies, "You must not destroy or put acreage to another use before written consent is given by an authorized CCC or FCIC loss adjuster for such destruction or other use." R. 55. A National Appeals Division hearing examiner later characterized it as a lack of evidence of the wheat crop's having been planted. *See* R. 111.

3

March 2009.  *Id.*  It also emphasized that Hixson would have appealed if it had received the September 18, 2009 letter.

On July 28, 2011, a day before the 2009 SURE program's application deadline, Hixson filed an application for payment on an FSA-682 form, referencing its July 26, 2011 letter of appeal in support.  R. 39–41.  On August 26, 2011 the SURE application was approved, but the benefits were calculated as "zero" based on the September 15, 2009 determination that Hixson had no failed acreage.  R.113.  Hixson was notified of its right to appeal from that denial.  R. 58.

Hixson appealed (requested "reconsideration"), but on October 4, 2011 the Prowers County FSA Committee notified Hixson that it was denying the appeal because under the SURE program's rules "it is not possible to overturn decisions that have become administratively final," namely the September 15, 2009 decision.  R. 45.  On October 25, 2011 the FSA sent Hixson a letter clarifying that "[s]ince your 2009 SURE Application was approved [for $0,] the only appeal rights a participant has is when there is a question in fact or factual dispute," such as the "amount of production, acres, etc. or [an] assertion about correctly applying a rule, regulation, or generally applicable provision according to FSA Handbook procedure found in 1-SURE Par. 11 A."  R. 5.

Hixson appealed to the Colorado State FSA Committee.  However, before that appeal proceeded, it withdrew the appeal in favor of a direct appeal to the USDA's National Appeals Division ("NAD").  R. 9.  An NAD hearing officer held an evidentiary hearing on February 17, 2012.  ECF No. 31-2.

On May 2, 2012 the NAD hearing officer determined that the Prowers County FSA Committee's decision was not erroneous because Hixson's attempt to appeal the September 15,

4

2009 disapproval of its reported failed acreage was untimely. *See generally* R. 108–20. The hearing officer found that the FSA had "followed its usual mailing procedures when it mailed the 2009 Adverse Decision," and that Hixson "fail[ed] to prove the 2009 Adverse Decision was not mailed to [it] or not received by [it]." R. 115–16. Accordingly, the hearing officer concluded that the Prowers County FSA Committee's September 2009 determination was final, so the FSA had properly calculated Hixson's SURE benefit as $0. R. 118. The hearing officer also denied Hixson's request for equitable relief because only the Director of the NAD or Secretary of Agriculture could provide such relief. R. 119.

Hixson then appealed to the Director of the NAD. R. 232. On August 28, 2012 NAD Deputy Director James Murray, on delegation by the Director, upheld the hearing officer's determination and denied the request for equitable relief. R. 248–50.

In this action, Hixson seeks judicial review of the USDA's treatment of its SURE application. Jurisdiction is proper under 5 U.S.C. § 702 and 7 U.S.C. § 6999.

## STANDARD OF REVIEW

Under the Administrative Procedure Act ("APA"), the Court must set aside an agency's decision if, after reviewing the administrative record, the Court finds that the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Id.* (quoting *Burlington*

*Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)). An agency action is arbitrary and capricious if

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Id.*

The APA also requires the Court to set aside any agency decision that is "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B). Agency actions are presumed valid, and the burden of proof lies with plaintiffs who challenge such actions. *Citizens' Comm. to Save Our Canyons v. Krueger*, 513 F.3d 1169, 1176 (10th Cir. 2008).

## ANALYSIS

Three issues are raised in this action: 1) whether the FSA's award of $0 was arbitrary and capricious; 2) whether the NAD Director's decision to deny Hixson's request for equitable relief was arbitrary and capricious; and 3) whether the USDA's overall treatment of Hixson's SURE application amounted to a denial of due process. I will address each issue in turn.

### A. **The $0 Award**.

First, Hixson argues that the FSA awarded it $0 due to "ongoing arbitrary and capriciousness" in allegedly misprocessing its notice of failed acreage, erroneously denying its 2009 SURE claim, and subsequently refusing to reconsider these decisions. ECF No. 39 at 2–5. Because Hixson believes these arbitrary and capricious actions are "continuous," it asserts that its claims can lie even if it did not appeal the Prowers County FSA Committee's September 2009 decision in time. *Id.* at 5. That is incorrect.

6

A plaintiff must "exhaust all administrative appeal procedures established by the Secretary [of the USDA] or required by law before the person may bring an action in a court of competent jurisdiction against (1) the Secretary; (2) the [USDA]; or (3) an agency, office, officer, or employee of the [USDA]." 7 U.S.C. § 6912(e). This requirement applies to APA claims concerning the SURE program. *Bartlett v. U.S. Dep't of Agric.*, 716 F.3d 464, 472 (8th Cir. 2013). Since the FSA's SURE decisions are appealable under USDA regulations, *see* 7 C.F.R. § 780.15(c), an applicant must exhaust these administrative appeal procedures before it may file suit. Hixson did not do so here.

By regulation, the FSA must provide written notice "no later than 10 business days" after denying a SURE claim. 7 C.F.R. § 780.15(a). An applicant then must submit a written request for an appeal "that is received no later than 30 calendar days from the date a participant receives written notice of the decision." *Id.* § 780.15(c). Notice of an adverse decision is "deemed received" for the purposes of this rule "7 calendar days following deposit for delivery by regular mail." *Id.* § 780.15(e)(2).

The Director found that the FSA mailed notice of its decision to Hixson on September 18, 2009. R. 249. This letter was not returned. *Id.* The Prowers County FSA Committee kept a copy of this letter on file, and followed standard procedures in mailing "hundreds" of letters like this every week. ECF No. 31-2 at 137:3–11. Hixson claims that it did not "knowingly waive[] [its] right to appeal." ECF No. 32 at 12. However, this claim is insufficient to carry Hixson's burden of proving by a preponderance of the evidence that the FSA did not provide notice of its decision. *See* 7 C.F.R. § 11.8(c). Rather, "[t]he presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that

they have properly discharged their official duties." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004) (quoting *United States v. Chem. Found.*, 272 U.S. 1, 14–15 (1926)).

Accordingly, the Prowers County FSA Committee's notice was deemed received seven days after being deposited for delivery by regular mail, on September 25, 2009. Hixson thus had until October 25, 2009 to appeal the FSA's decision. R. 249. Hixson did not appeal during this time period, rendering the decision final on the date it was issued—September 15, 2009. *See* 7 C.F.R. § 780.15(e).

Hixson's failure to seek an administrative appeal of the Prowers County FSA Committee's September 2009 decision bars judicial review of that decision. This would be true even if 7 U.S.C. § 6912(e)'s exhaustion requirement were not jurisdictional, such that a court could excuse a party's failure to exhaust administrative remedies. *See Forest Guardians v. U.S. Forest Serv.*, 641 F.3d 423, 433 (10th Cir. 2011). The Tenth Circuit has not decided which, if any, exceptions may apply to § 6912(e). *Id.* But the Fifth Circuit, for example, has written:

> Traditional circumstances in which courts have excused a claimant's failure to exhaust administrative remedies include situations in which (1) the unexhausted administrative remedy would be plainly inadequate, (2) the claimant has made a constitutional challenge that would remain standing after exhaustion of the administrative remedy, (3) the adequacy of the administrative remedy is essentially coextensive with the merits of the claim (e.g., the claimant contends that the administrative process itself is unlawful), and (4) exhaustion of administrative remedies would be futile because the administrative agency will clearly reject the claim. In addition, exhaustion may be excused when (5) irreparable injury will result absent immediate judicial review.

*Dawson Farms, LLC v. Farm Serv. Agency*, 504 F.3d 592, 606 (5th Cir. 2007) (internal quotation marks and citations omitted). The Eighth Circuit has compiled a similar list: "A party may be excused from exhausting administrative remedies if the complaint involves a legitimate constitutional claim, if exhaustion would cause irreparable harm, if further administrative

procedures would be futile, or if the issues to be decided are primarily legal rather than factual." *Ace Prop. & Cas. Ins. Co. v. Fed. Crop Ins. Corp.*, 440 F.3d 992, 1000 (8th Cir. 2006) (citations omitted). Hixson alleges that it never received notice of the Prowers County FSA Committee's decision, but this assertion does not warrant any of the aforementioned "limited bases" for excusing administrative exhaustion. *Dawson Farms*, 504 F.3d at 606.

For similar reasons, Hixson's July 26, 2011 attempted appeal and subsequent request for reconsideration were untimely. These requests came nearly two years after the appeal window closed. The only exception to the strict 30-day appeal window is discretionary, allowing a late appeal if, "in the judgment of the reviewing authority with whom such request is filed, exceptional circumstances warrant such action." 7 C.F.R. § 780.15(d). But "[a] participant does not have the right to seek an exception under this paragraph," and the "FSA's refusal to accept an untimely request is not appealable." *Id.* Under these circumstances, the Court may not review the agency's refusal to permit an appeal because this choice is "committed to agency discretion by law." *Webster v. Doe*, 486 U.S. 592, 600 (1988) (quoting 5 U.S.C. § 701(a)(2)). Thus, neither the FSA nor the Director acted arbitrarily or capriciously in declining to grant Hixson's tardy appeal and reconsideration requests.[3]

---

[3] Although the parties did not raise or brief the issue, it appears to the Court that Hixson's claim that the Prowers County FSA Committee mistakenly denied its 2009 SURE application might also be barred by the statute of limitations. Unless another statute prescribes otherwise, a party must bring an APA claim within six years after the right of action first accrues. *Impact Energy Res., LLC v. Salazar*, 693 F.3d 1239, 1245 (10th Cir. 2012) (citing 28 U.S.C. § 2401(a)). "The right of action first accrues on the date of the final agency action." *Harris v. F.A.A.*, 353 F.3d 1006, 1010 (D.C. Cir. 2004); *accord Impact Energy Res.*, 693 F.3d at 1245; *Smith v. Marsh*, 787 F.2d 510, 512 (10th Cir. 1986). The FSA rejected Hixson's SURE application on September 15, 2009. R. 55. As a result, Hixson's ability to challenge this decision in court arguably expired on September 15, 2015, but Hixson did not file this lawsuit until September 18, 2015. ECF No. 1. It is true that a statute of limitations may be equitably tolled if a litigant can show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). But Hixson does not allege that it followed up on

9

## B. Equitable Relief.

Hixson also charges that the NAD Director's denial of its request for equitable relief was arbitrary and capricious or otherwise not in accordance with law. The Director noted that he may award equitable relief under 7 U.S.C. § 7996(b), but he found Hixson to be ineligible for such relief. R. 249–50. Defendants assert that under 7 U.S.C. § 7996(f), the Director's discretionary decision not to grant this relief "shall not be subject to review under" the APA. None of these statements is accurate.

First, 7 U.S.C. § 7996(b) allows only the Secretary of the USDA to provide equitable relief. The NAD Director gets his power to grant equitable relief from 7 U.S.C. § 6998(d), which states that "the Director shall have the authority to grant equitable relief under this section in the same manner and to the same extent as such authority is provided to the Secretary under section 7996 of this title." Second, 7 U.S.C. § 7996(f) forbids judicial review of discretionary decisions "under this section" by "the Secretary, the State Director, or the State Conservationist." The NAD Director's decision to grant or deny equitable relief is not made "under" § 7996, nor is he "the Secretary, the State Director, or the State Conservationist." Instead, 7 U.S.C. § 6999 provides that any final determination by the Director is subject to judicial review under the APA. The Director's denial of Hixson's request for equitable relief is thus subject to judicial review.

On review, the Director's decision must be set aside because he based his decision solely on a clear misinterpretation of the applicable law. Although 7 U.S.C. § 7996(b) (via § 6998(d))

---

its 2009 SURE claim until more than two years after it submitted the claim to the FSA. *See* ECF No. 1 at ¶¶ 17–32. Moreover, the Tenth Circuit has held that equitable tolling is unavailable when a plaintiff had "ample opportunity" to file a claim within the limitations period after learning about the grounds for the claim. *Barnes v. United States*, 776 F.3d 1134, 1150 (10th Cir. 2015). Hixson points only to events that occurred through August 28, 2012, three years before the statute of limitations ran and Hixson filed suit. *See* ECF No. 1. On this record, Hixson seemingly had "ample opportunity" to file this case within the statute of limitations period. *Barnes*, 776 F.3d at 1150.

would allow the Director to grant relief to "any participant that is determined to be not in compliance with the requirements of a covered program," the Director concluded that Hixson was denied benefits "because of the calculation of eligible acreage," not because Hixson failed to comply with SURE's requirements. R. 249–50. This explanation does not survive scrutiny. Obviously the SURE program requires applicants to have eligible failed acreage in order to receive disaster assistance payments. *See, e.g.*, 7 U.S.C. § 1531(b)(1)(A) (guaranteeing SURE payments to "eligible producers . . . *that have incurred crop production losses*" (emphasis added)). It makes no difference whether we say Hixson's claim was approved for zero acres or denied for 622.3 acres; in either case Hixson could not receive a SURE payment because it failed to satisfy the program's requirement of having eligible failed acreage.

Moreover, the FSA determined that Hixson had no eligible acreage because it failed to carry its burden of proving eligibility. In determining an applicant's eligible acreage, the agency requires producers to "prove to [the FSA county committee's] satisfaction that" (1) "the crop was planted with the intent to harvest using farming practices consistent for the crop and area," and (2) "the acreage failed because of disaster-related conditions." FSA Handbook 2-CP, at ¶ 24.5(B). Additionally, "the acreage must have been reported as failed acreage before the disposition of the crop." *Id.* at ¶ 24.5(C). The Prowers County FSA Committee received no response to its document request, R. 461, so it disapproved Hixson's Notice of Loss "due to a lack of evidence of the wheat crop being planted," R. 111. Said differently, the committee concluded that even assuming the wheat crop had been planted, it "was destroyed and replanted" before Hixson notified the agency or its insurer. R. 32. Hixson thus did not meet the SURE program's requirements because it failed to prove to the Prowers County FSA Committee's

11

satisfaction that it had planted 622.3 acres of wheat, that the wheat failed because of disaster-related conditions, and that it had reported this failed acreage before destroying the crop.

As a result, the Director is not legally precluded from excusing Hixson's failure to comply with the SURE program's requirement of having eligible failed acreage, or its failure to prove to the Prowers County FSA Committee that it had planted 622.3 acres of wheat, that the wheat failed because of disaster-related conditions, and that it had reported this failed acreage before destroying the crop. Because the Director offered no other reason for denying Hixson's request for equitable relief, the Director's decision must be vacated and remanded for further proceedings.

### C. **Due Process**.

Last, Hixson argues that defendants violated the Fifth Amendments' Due Process Clause by misprocessing its notice of failed acreage, failing to provide timely notice of this denial, and declining to subsequently review this erroneous decision. Defendants respond at the outset that Hixson waived this claim by failing to raise the issue in its opening brief, even though the claim was pled in its complaint. ECF No. 35 at 17 (citing Federal Rule of Appellate Procedure 28(a)(9)(A)). Defendants are mistaken. Although this case involves review of an agency action, it is still governed by the Federal Rules of Civil Procedure, not the Federal Rules of Appellate Procedure. *Compare* Fed. R. Civ. P. 1 ("These rules govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81."), *with* Fed. R. App. P. 1(a)(1) ("These rules govern procedure in the United States courts of appeals."). Neither the Federal Rules of Civil Procedure nor this District's local rules require waiver of a claim when an

issue is not raised in a plaintiff's opening brief.  *See* Fed. R. Civ. P.; D.C.COLO.LCivR. Hixson's claim must be resolved on its merits.

As another preliminary matter, defendants argue that Hixson's claim should be rejected to the extent that it seeks money damages, which are not available under the APA.  I agree.  The APA waives sovereign immunity for actions "seeking relief other than money damages."  5 U.S.C. § 702.  But Hixson also seeks declaratory judgment and, as its reply brief makes clear, reversal of the adverse agency decisions.  *See* ECF No. 1 at 11; ECF No. 39 at 8.  I therefore must address Hixson's due process challenge to the agency's actions under 5 U.S.C. § 706(2)(B).

The Due Process Clause provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  Here, Hixson asserts that it had a property interest in receiving payments from the SURE program.  ECF No. 1 at 69–70.  As the Supreme Court stated in *Roth*, to hold a legally cognizable property interest in a government benefit, an applicant "must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  408 U.S. 564, 577 (1972).  In creating the SURE program, the Food, Conservation, and Energy Act of 2008 dictates that "[t]he Secretary *shall* . . . make crop disaster assistance payments to eligible producers . . . that have incurred crop production losses," and specifies the eligibility criteria and amount of assistance payments.  7 U.S.C. § 1531(b) (emphasis added).  The program admits of no discretion; all of the Secretary's duties are mandatory.  *See id.*  Hixson thus had a property interest in SURE payments for the purposes of the Due Process Clause.  This conclusion is buttressed by the Supreme Court's observation in *Goldberg v. Kelly* that "[i]t may be realistic today to regard welfare entitlements as more like 'property' than a 'gratuity.' . . . 'Many of the most important . . . entitlements now

flow from government: *subsidies to farmers* . . . [, etc.]'" 397 U.S. 254, 263 n.8 (1970) (emphasis added) (quoting Charles A. Reich, *Individual Rights and Social Welfare: The Emerging Legal Issues*, 74 Yale L.J. 1245, 1255 (1965)).

Although Hixson had a cognizable property interest in a SURE payment, the government's denial of that payment did not violate Hixson's due process rights. "Due process does not require that a property owner receive actual notice before the government may take his property." *Jones v. Flowers*, 547 U.S. 220, 226 (2006). Instead, due process merely requires the government to provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id.* The Supreme Court has noted its "ample precedent condoning notice by mail," in which it "deemed notice constitutionally sufficient if it was reasonably calculated to reach the intended recipient when sent." *Jones*, 547 U.S. at 226.

Hixson understandably cannot show that the FSA failed to send notice of its decision, or that it misaddressed this notice. On the Record before me, however, I see no reason to think either of these things happened. The FSA apparently has used the same address for Hixson for years without any issues. R. 112. The agency kept a copy of the disputed letter on file, and it follows standard procedures in mailing "hundreds" of letters like this every week. ECF No. 31-2 at 137:3–11. Though Hixson alleges that on February 28, 2012 it received mail that was intended for "Hetrick Farms," implying that the FSA sometimes misaddresses envelopes, Hixson does not cite to the Record or otherwise offer evidence of this mix-up, and it does not allege that

14

Hetrick Farms did not also receive a copy of this mail. *See* ECF No. 39 at 6–7. No letters for Hixson have ever been returned to the agency. R. 112. Without more, I have to conclude that the FSA's means of notifying farms of SURE application decisions were reasonably calculated to reach the intended recipients.

Next, the question whether the agency's internal review of its decision satisfied the requirements of due process can be answered by reference to the test first articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976). There, the Supreme Court wrote that identifying the dictates of due process requires balancing three factors:

> (1) the private interest that will be affected by the official action, (2) a cost-benefit analysis of the risks of an erroneous deprivation versus the probable value of additional safeguards, and (3) the Government's interest, including the function involved and any fiscal and administrative burdens associated with using different procedural safeguards.

*Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (citing *Mathews*, 424 U.S. at 335). The private interest at stake here is the $100,000 or so that Hixson claims to have been wrongly denied, *see* R. 177—no trivial amount, but also not the type of entitlement that "provides the means to obtain essential food, clothing, housing, and medical care," *Goldberg*, 397 U.S. 254, 264 (1970), since Hixson went without following up on its application for more than two years (and received $111,236 in insurance benefits for the crop loss according to plaintiff's opening brief, ECF No. 32 at 7).

The second and third factors are harder to gauge because Hixson has not indicated what additional safeguards it believes would have protected its property interest. Agency appeals are already governed by several statutory and regulatory provisions. *See, e.g.*, 7 U.S.C. §§ 6998, 7996; 7 C.F.R. § 11.9–.12. I can imagine some additional safeguards that Hixson might suggest,

like waiving the administrative finality of an adverse decision when an applicant claims not to have received notice of the decision. But the probable value of reopening administratively final decisions is uncertain at best, and doing so could impose serious burdens on the government across its various programs. Indeed, the Supreme Court has previously approved of a "statutory scheme . . . in which the Secretary may specify such requirements for exhaustion as he deems serve his own interests in effective and efficient administration." *Weinberger v. Salfi*, 422 U.S. 749, 766 (1975). Due process requires no more.

## ORDER

The Court REVERSES and REMANDS the National Appeals Division Director's decision denying Hixson's request for equitable relief. On remand the Director must consider the merits of Hixson's request and base his decision on the Record. As the prevailing party, plaintiff is awarded her reasonable costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

DATED this 13th day of June, 2017.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge